**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEFFREY DAMICO<br>200 Woodhurst Drive<br>Ponte Verdra, FL 32081<br><br>Plaintiff,<br><br>v.<br><br>GWYNEDD MANUFACTURING INC.<br>800 E Walnut Street<br>North Wales, PA 19454<br><br>Defendant. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Jeffrey Damico (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Plaintiff against Gwynedd Manufacturing Inc., (hereinafter referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

**JURISDICTION AND VENUE**

2. Plaintiff resides in and is a citizen of Florida.

3. Upon information and belief, Defendant Gwynedd Manufacturing Inc. is incorporated under the laws of Pennsylvania with headquarters and/or principal place of business in same, rendering it a citizen of Pennsylvania.

4. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Florida, and Defendant is a citizen of Pennsylvania, and the amount in controversy exceeds $75,000.

5. This action is also being initiated pursuant to federal law(s) (the ADA) and therefore, the United States District Court for the Eastern District of Pennsylvania also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

6. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

8. Plaintiff is proceeding herein under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is an adult individual with an address as set forth in the caption.

11. Defendant is a defense contractor located in North Wales, Pennsylvania, that manufactures products for the United States Department of Defense and various law enforcement agencies and is located at the above-captioned address.

12. At all relevant times herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff began working for Defendant in or about April of 2021, initially through Aerotek, a temporary staffing agency. However, in or about December of 2021, Defendant hired Plaintiff as a direct employee.

15. Throughout his employment with Defendant, Plaintiff worked as a Maintenance Technician in Defendant's Facilities Maintenance Department, primarily performing responsibilities associated with scrap maintenance.

16. As a Maintenance Technician, Plaintiff was primarily responsible for collecting and removing aluminum and steel scrap materials from Defendant's manufacturing equipment, including operating a forklift, coordinating scrap collection between departments, and performing other maintenance-related duties.

17. At all times relevant herein, Plaintiff was supervised by Defendant's Facilities Maintenance Manager, Earl "Buddy" Grater (hereinafter "Grater").

18. Plaintiff was employed by Defendant for approximately four (4) years, until his unlawful termination (discussed further *infra*), on or about June 18, 2025.

19. Throughout his employment with Defendant, Plaintiff consistently demonstrated a strong work ethic and performed his job duties diligently and with a high level of competence.

20. Plaintiff has and continues to suffer from disabilities, including an aortic aneurysm and associated medical conditions and complications.

21. As a result of his aforesaid health conditions, Plaintiff suffers from shortness of breath, dizziness, and fatigue; which (at times) interferes with his ability to perform some daily life activities, including but not limited to breathing without difficulty, lifting, and working (among other daily life activities).

22. Despite Plaintiff's aforesaid disabilities and limitations, he was able to perform the duties of his job well with Defendant; however, he (at times) required some reasonable medical accommodations. .

23. For example, Plaintiff's aforesaid health conditions required ongoing medical evaluation, treatment, and diagnostic testing, including appointments with his cardiologist, diagnostic scans, and blood work for genetic testing. As a result, Plaintiff required intermittent time off from work to attend medically necessary appointments and obtain treatment for his serious health conditions.

24. Additionally, in or about February of 2025, Plaintiff's cardiologist ordered him to undergo blood work for genetic testing to monitor his aforementioned ADA-qualifying disabilities.

25. In an attempt to avoid missing work and be a team player by not leaving his employer in the lurch, Plaintiff arranged for a nurse to come to Defendant's workplace to perform the necessary blood draw after learning that this was an available option.

26. Accordingly, on or about February 25, 2025, the nurse arrived at Defendant's facility and performed Plaintiff's blood draw in the lobby of the building without any member of the public/customers present, and it took approximately two (2) minutes.

27. Later that day, however, Grater contacted Plaintiff and proceeded to verbally admonish him, stating, "I can't believe I'm having this conversation with you, but a nurse came and drew your blood today and you can't have that in the workplace" – outright berating Plaintiff for utilizing a reasonable medical accommodation that caused far less disruption than taking an hour or more off from work to attend an appointment.

28. While being berated by Grater for utilizing a very reasonable medical accommodation of fleeting duration, Plaintiff further informed Grater of his ongoing disabilities and explained that the blood work was medically necessary for genetic testing related to his aforesaid health conditions, which was difficult to schedule around his working hours.

29. Nevertheless, Grater adamantly informed Plaintiff that he could not have a nurse come to Defendant's workplace to perform blood work, disregarding Plaintiff's disability-related medical needs and requested accommodation – all without engaging in any interactive process as required under the ADA or providing any legitimate reason as to why Plaintiff's request could not be accommodated.

30. Thereafter, on or about March 20, 2025, Plaintiff attended his annual performance review with Grater.

31. During the aforesaid March 20, 2025 performance meeting, Plaintiff, Grater again admonished Plaintiff regarding the aforementioned February 25, 2025 blood draw incident. Specifically, Grater reiterated to Plaintiff that having a nurse come to Defendant's workplace was "not ok, without again engaging in any interactive process with Plaintiff.

32. Plaintiff again attempted to discuss his disabilities and need for reasonable accommodations with Grater; however, Grater dismissed Plaintiff's concerns. As a result, Plaintiff believed that he was subjected to increased scrutiny because of his disabilities and disability-related medical needs, which were unlawfully negatively impacting his performance evaluations.

33. Following his annual performance review, Plaintiff became increasingly concerned that requesting additional accommodations or discussing his disabilities would jeopardize his continued employment.

34. As a result, for the next few months, Plaintiff tried to just perform his job duties well and take care of his health conditions on his own time without calling out, for fear of being terminated.

35. Between approximately February of 2025 until Plaintiff's termination on or about June 18, 2025 (while Plaintiff had been taking and/or requesting intermittent and block time off

from work to care for and treat his aforesaid health conditions), Defendant's management never informed Plaintiff of his individualized FMLA rights, as required by the FMLA. Therefore, Defendant failed to follow proper notice, designation, and informational regulations of the FMLA.

36. Moreover, Defendant failed to designate Plaintiff's brief two-minute blood draw as FMLA-qualifying intermittent absenteeism despite the fact that FMLA leave can be taken in minute or hourly increments during scheduled workdays.[2]

37. Nevertheless, on or about June 18, 2025, Defendant abruptly terminated Plaintiff's employment under the purported justification of a reduction in force ("RIF").

38. Defendant's purported reason for Plaintiff's termination is completely false and pretextual, however, because at the time of Plaintiff's termination, approximately twelve (12) employees worked in his department, and Plaintiff had greater seniority than majority all of them. ***Yet, upon information and belief, Plaintiff was the only employee in his department selected for termination***.[3]

[2] It is well established that FMLA leave is permitted for whole days, partial days or medical-related breaks under the FMLA. *See e.g. Mora v. Chem-Tronics, Inc*., 16 F. Supp. 2d 1192 (S.D. Cal. 1998) (Employees may take leave ***in any size increments*** and employers may account for the leave in the shortest period of time the payroll system uses to calculate absences). *See also Sabbrese v. Lowe's Home Centers, Inc.,* 320 F. Supp. 2d 311 (W.D. Pa. 2004) (explaining that *an employer is prohibited from counting medically necessary breaks against an employee* under the FMLA) (emphasis added); *Collins v. U.S. Playing Card Co*., 466 F. Supp. 2d 954 (S.D. Ohio 2006) (same).

[3] It is not uncommon for courts to find pretext with claimed one-person RIF defenses, as on their face, they seem implausible. *See e.g. Richards v. Eldorado Nat'l Co.,* 2004 U.S. Dist. LEXIS 21205, at *42 (D. Kan. 2004)(denying summary judgment in wrongful termination case because characterizing a "one employee" termination as a "RIF" appeared subjective and pretextual); *Bingham v. Raytheon Tech. Servs. Co., LLC*, 2014 U.S. Dist. LEXIS 154915, at *8 (S.D. Ind. 2014)(denying summary judgment in discrimination for questionable alleged RIF procedures and explaining "one such way of proving [discrimination] in the RIF context is to show that the decision to terminate one employee in particular on an impermissible basis was characterized as a RIF in order to avoid liability." Moreover, an employer who selectively cleans house cannot hide behind convenient euphemisms such as "downsizing" or "streamlining." Whether or not trimming the fat from an organizational chart is a prudent practice in a particular business environment, the decision to eliminate specific positions must not be tainted by a discriminatory animus. *LeBlanc v. Great Am. Ins. Co*., 6 F.3d 836, 844-45 (1st Cir.1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L.Ed.2d 72 (1994).

39. Moreover, following Plaintiff's termination, Defendant assigned Plaintiff's former job responsibilities to a substantially less tenured and nondisabled employee, Alan Croman (hereinafter "Croman"), who worked in Defendant's Milling Department and lacked prior experience performing Plaintiff's job duties.

40. Upon Plaintiff's information and belief, Defendant also required multiple employees to perform Plaintiff's former job responsibilities following his termination, despite Defendant's contention that Plaintiff's position did not require a full-time employee.

41. Finally, upon further information and belief, Defendant retained at least one (1) less tenured employee who performed substantially similar scrap maintenance responsibilities to Plaintiff in another building.

42. As a result, there can be no doubt that Plaintiff was terminated because of his aforementioned health conditions and/or requested accommodations, in that Defendant clearly perceived Plaintiff as being too disabled to perform his job duties or for potentially needing to take time off from work in the future for treatment or more diagnostic testing.

43. Prior to Plaintiff's termination, Defendant failed to properly accommodate his health conditions by berating him for utilizing reasonable medical accommodations (blood testing at work and/or time off for doctors' appointments), penalizing him for the same during his annual review, failing to engage in any interactive practice regarding his accommodations, and terminating him to punish him for and/or prevent him from taking additional time off to attend medical appointments, undergo diagnostic scans, and obtain blood work for genetic testing.

44. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation and terminated because of (1) his actual/perceived/record of

disabilities; (2) his requests for reasonable medical accommodations; and (3) Defendant's failure to properly accommodate his health conditions (set forth *supra*).

45. Plaintiff also believes and therefore avers that his actual/perceived/record of health conditions were motivating and/or determinative factors in the termination of his employment by Defendant.

**COUNT I**
**<u>Violations of the Americans with Disabilities Act, as Amended ("ADAAA")</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate; [4] Hostile Work Environment)**

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

48. Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

49. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

50. Plaintiff requested reasonable accommodations from Defendant including but not limited to time off to attend medical appointments, undergo diagnostic scans, and obtain blood work for genetic testing.

51. Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of his aforesaid health conditions and requested accommodations.

52. Plaintiff was terminated from his employment with Defendant on or about June 18, 2025, in close proximity to his requests for/utilization of reasonable accommodations.

53. Prior to Plaintiff's termination, Defendant failed to properly accommodate his health conditions by berating him for utilizing reasonable medical accommodations (blood testing at work), penalizing him for the same during his annual review, and terminating him to punish him for and/or prevent him from taking additional time off to attend medical appointments, undergo diagnostic scans, and obtain blood work for genetic testing.

54. Plaintiff believes and therefore avers that he was subjected to discrimination, a hostile work environment, retaliation and terminated because of (1) his actual/perceived/record of disabilities; (2) his requests for reasonable medical accommodations; (3) Defendant's failure to properly accommodate his health conditions (set forth *supra*); and (4) Defendant's erroneous perception that Plaintiff was disabled to perform his job duties and/or that he would need further accommodations in the future to perform the same.

55. Plaintiff also believes and therefore avers that his actual/perceived/record of health conditions were motivating and/or determinative factors in the termination of his employment by Defendant.

56. These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Retaliation & Interference)**

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

59. Plaintiff requested leave for medical reasons from Defendant, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

60. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

61. Defendant is engaged in an industry affecting commerce and employed at least fifty (50) or more employees within 75 miles of the location where Plaintiff worked for Defendant for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

62. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

63. Plaintiff's requested intermittent and/or block time off to attend medical appointments, undergo diagnostic scans, and obtain blood work for genetic testing during his last full year of employment with Defendant constituted FMLA-qualifying leave.

64. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or attempting to exercise his FMLA rights and/or for requesting FMLA-qualifying leave; (2) considering Plaintiff's need for medical treatment and leave in making the decision to terminate him; (3) failing to inform Plaintiff of his individualized FMLA rights, including applicable notice and designation requirements; (4) terminating Plaintiff to prevent him from taking FMLA-qualifying leave in the future; (5) making negative comments and/or taking actions toward Plaintiff that would dissuade a reasonable person from exercising his rights under the FMLA; and (6) failing to designate Plaintiff's requests for intermittent and/or

block time off for his aforesaid health conditions during the last approximate year of his employment with Defendant as FMLA-qualifying or FMLA-protected leave.

65. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate including but not limited to damages for emotional distress, pain, suffering and humiliation;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: October 30, 2026

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Jeffrey Damico | : | CIVIL ACTION |
| v. | : | |
| Gwynedd Manufacturing Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/30/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:____________ Judge:____________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):____________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

DAMICO, JEFFREY

**(b)** County of Residence of First Listed Plaintiff: St. Johns
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

**DEFENDANTS**

GWYNEDD MANUFACTURING INC.

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 10/30/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______